

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| THOMAS DEAN CATES, | ) | |
| | ) | |
| Movant-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33812 |
| | ) | |
| STATE OF MISSOURI, | ) | **Filed: Nov. 17, 2015** |
| | ) | |
| Respondent-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable Don M. Henry, Associate Circuit Judge

**<u>AFFIRMED</u>**

In April 2013, Thomas Dean Cates ("Movant") pleaded guilty, without the benefit of a plea agreement ("open plea"), to the class A felony of murder in the second degree and the unclassified felony of armed criminal action ("ACA"). *See* sections 565.021 and 571.015.[1] The trial court accepted the guilty pleas and subsequently sentenced Movant to serve a total incarceration term of fifty years: thirty years on the murder count, plus twenty years for ACA.

Movant, after arriving at the Department of Corrections, timely filed a *pro se* Form 40 seeking to set aside his conviction and sentence under Rule 24.035. Appointed counsel timely filed an amended motion that claimed Movant's "open plea of guilty was involuntary,

---

[1] All statutory references are to RSMo 2000. All rule references are to Missouri Court Rules (2015).

unknowing, and unintelligent because plea counsel[2] . . . misinformed [M]ovant as to the risks and consequences of rejecting a plea agreement offered by the [S]tate in favor of the open plea."[3] The claim was based on an allegation that plea counsel had "assured" Movant and his family that Movant "would do no worse than the [State's] thirty[-]year offer[,]" and he might get a lesser sentence by entering an open plea.

The parties stipulated that in lieu of conducting an evidentiary hearing on the amended motion, the motion court could enter its ruling based on the underlying criminal file and depositions given by Movant and plea counsel. After reviewing those materials, the motion court found that plea counsel made "affirmative representations to [M]ovant that [Movant's] sentences would not run consecutively and [M]ovant would not be sentenced to more than thirty years." Based on these factual findings, the motion court concluded that Movant's plea had been entered involuntarily and granted Movant's request to withdraw his guilty plea.

The State now timely appeals, presenting one point relied on that we quote *in toto*:

> The Motion Court erred in finding that [Movant's] trial counsel provided inadequate representation, because it was not ineffective assistance for trial counsel to offer his opinion and advice to [Movant] based on due diligence in asking other practicing attorneys in the community, in that giving advice and opinions to clients is precisely the type of thing competent and effective counsel should provide to a defendant.

Finding no merit in this contention, we affirm the judgment of the motion court.

---

[2] In their briefs, the parties refer to the attorney who represented Movant at the trial court level sometimes as "trial counsel" and sometimes as "plea counsel." We continue the practice in this opinion.

[3] Movant was sentenced on August 2, 2013, and his *pro se* motion was filed on November 6, 2013 -- well within the 180-day period permitted by Rule 29.035(b). A 30-day extension was granted for the filing of the amended motion, and the transcript of the guilty plea and sentencing hearings was filed on December 12, 2013. The amended motion was filed on March 12, 2014 -- the last day permitted under the aggregated 90-day period afforded by Rule 24.035(g) for filing an amended motion following the grant of an extension.

2

**Standard of Review and Applicable Law**

An order granting or denying relief under Rule 24.035 is deemed a final judgment, and it may be appealed by either the movant or the State. Rule 24.035(k). If an evidentiary hearing on the motion is granted, the movant has the burden of proving his or her claims by a preponderance of the evidence. Rule 24.035(i); *West v. State*, 159 S.W.3d 847, 849 (Mo. App. S.D. 2005). "Determinations concerning credibility are exclusively for the motion court and it is free to believe or disbelieve any evidence, whether contradicted or undisputed." *Yarberry v. State*, 372 S.W.3d 568, 572-73 (Mo. App. S.D. 2012). The findings and conclusions of the motion court are presumed correct, and we will reverse only if the appellant demonstrates that they are clearly erroneous. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

**The Motion Court's Findings**

The evidence submitted to the motion court presented two different versions of what plea counsel told Movant about the sentences he might receive if he entered an open plea. The motion court addressed that conflicting evidence in the following manner:

BACKGROUND FACTS

3. That under the open plea there was no agreement as to the length of the sentences or whether the sentences would run concurrent or consecutive.

. . . .

8. [I]t was agreed by the parties that the case would be submitted to the court on [M]ovant's and [plea counsel]'s depositions and by the court taking judicial notice of the underlying criminal file in this case. . . .

. . . .

3

. . . .

19.     That [M]ovant's counsel told [M]ovant that they ([plea counsel and prior counsel]) thought the worst case scenario would be that [Movant] would wind up with 30 years, that they had spoken with different attorneys and no one thought the judge would run the sentences consecutively. [Plea counsel] told [Movant], "I can't promise you that he (the judge) won't, but based on who I've talked to there is no way I can see him running this consecutively."

20.     That [plea counsel] further testified that "There were reassurances I made, you know, 'Just based on my experience here's what I think is going to happen. I think we've got 30 in the bank at the worst.' What I told [Movant] was I was going to try and do was keep it in the 20's, or even get it down to 19."

21.     That [plea counsel] testified on cross-examination that he never used the word "assure" or "promise." What he told [M]ovant was, "[Movant], I honestly don't believe it's going to happen. If I believed it was going to happen, I wouldn't be telling you to plead to this."

22.     That [plea counsel], however, made the following entry in his case activity notes on April 18: "Jail visit with family and [Movant]. Speak with Jacob Garrett/Donna Anthony/Moore & Walsh. No one thinks will run consecutive. Steve doesn't either. Assured [Movant] case will be concurrent." Further, on August 2, [plea counsel] wrote in his case activity notes: "Sentencing -- 50 fucking years. Tell [Movant]'s family I screwed up. No way I even thought would be consecutive. Gave assurances to [Movant] and family."

23.     That [M]ovant testified that he recalled the sentence in paragraph 12 of the Petition to Enter a Plea of Guilty that reads, "I know that a sentence I will receive is solely a matter within the control of the Judge."

24.     That paragraph 12 of the Petition to Enter a Plea of Guilty also provides that, "I declare that no one has promised or suggested that I will receive a lighter sentence, or probation, or any other form of lenience if I plea Guilty, other than as set forth in the plea agreement set out below." Immediately following this is

4

the handwritten statement that, "The prosecutor has recommended an open plea to the charge of Murder in the Second Degree and Armed Criminal Action." Paragraph 13 of the Petition further provides that, "Neither I nor any of my friends or loved ones have been mistreated, threatened, coerced or forced in any manner by anyone to get me to plead guilty, nor were there any promises, inducements, or representations made except as set forth in paragraph 12 above.["]

25. That [M]ovant testified that [prior counsel] read the plea petition in a quick hurry, spending about ten minutes with him on the whole reading of it."

26. That [M]ovant testified that he relied on [plea counsel]'s advice and on [plea counsel] to get him a better deal than the first plea agreement,[4] and had he known that the judge was going to run the sentences consecutive he would not have pled open.

## COURT'S FINDINGS AND CONCLUSIONS

27. That [plea] counsel's statements that "there's no way I can see him running this consecutively" and "I think we've got 30 in the bank at the worst," together with [plea] counsel's statements set forth in paragraphs 14 and 15 above [concerning plea counsel's promise of something better than the State's first offer], constitute positive or affirmative representations to [M]ovant that the sentences would not run consecutively and [M]ovant would not be sentenced to more than thirty years.

28. That the statements made by [plea] counsel set forth in paragraph 26 were made by [plea] counsel to persuade movant to accept the open plea offer.

29. That [M]ovant reasonably relied on [plea] counsel['] s representations and to [sic] accept the second plea offer.

30. That reasonably competent counsel would not have assured [M]ovant that the court would run the sentences concurrently or that the court would not do any worse than thirty years.

---

[4] It is difficult to tell from the record exactly what the "first" plea offer from the State consisted of or when and how it was communicated to Movant. In any event, such details are not relevant to the resolution of the appeal.

5

31. That [plea] counsel, in making the representations set forth in paragraph 26 above, failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances.

32. That the failure to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances constitutes ineffective assistance of counsel.

33. That [plea] counsel's ineffectiveness renders [M]ovant's pleas of guilty involuntary.

34. That record of the guilty plea proceeding does not refute [M]ovant's claim that he relied on his counsel's assurances that the sentences would run concurrent and that at the worst [M]ovant would be sentenced to thirty years.

35. That [M]ovant's counsel were so biased toward the notions that the court would not run the sentences consecutively or do any worse than thirty years that counsel did not adequately and effectively advise [M]ovant of the risks and consequences of accepting the open plea offer, and as a result thereof [M]ovant was prejudiced because he could not make an informed decision, i.e. a decision based on reasonably competent legal advice, whether to accept or reject the open plea offer.

CONCLUSION

It is, therefore, the Judgment of the court that [M]ovant's request to withdraw his plea of guilty is granted. The court further Orders and Adjudges that the underlying criminal case be placed on the court's trial calendar.

(Record and case citations omitted.)

**Analysis**

Contrary to the characterization of the motion court's ruling in the State's point on appeal, the motion court did not conclude that plea counsel was ineffective because he "offer[ed] his opinion and advice to [Movant] based on due diligence[.]" Instead, as the State eventually acknowledges in the argument portion of its brief, the motion court

6

concluded "[t]hat reasonably competent counsel would not have *assured* [M]ovant that the court *would* run the sentences concurrently or that the court *would not* do any worse than thirty years." (Emphasis added.)

> Following a guilty plea, the ineffectiveness inquiry is limited to whether counsel's actions impinged on the movant's ability to enter a knowing and voluntary plea. *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997). Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive representation upon which the movant is entitled to rely. *Dorsey v. State*, 115 S.W.3d 842, 845 (Mo. banc 2003). If a defendant is misled or induced to enter a plea of guilty by fraud, mistake, misapprehension, coercion, duress or fear, then the defendant should be permitted to withdraw the plea.

*Dobbins v. State*, 187 S.W.3d 865, 866-67 (Mo. banc 2006).

As indicated in its findings and conclusions recited above, the motion court received conflicting evidence regarding whether Movant had a reasonable but mistaken belief about his sentence that was based on a positive representation from plea counsel. The resolution of such conflicting evidence, as earlier noted, is within the exclusive province of the motion court. *Yarberry*, 372 S.W.3d at 572. Just as "an appellate court does not act as a 'super juror' with veto powers" in reviewing whether sufficient evidence supports a criminal conviction, *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc 2012) (quotations omitted), we will likewise not re-weigh conflicting evidence after the motion court has decided the facts.

The State generically acknowledges that "the record does have references to the word 'assure,'" but it fails to set forth other substantial evidence supporting the motion court's ruling, improperly leaving it to Movant to point out quotations from plea counsel's own written memos made prior to the open plea that he had "[a]ssured [Movant] case will be concurrent" and plea counsel's memo entered after the guilty plea that stated: "Sentencing -

7

50 fucking years. Tell [Movant]'s family I screwed up. No way I even thought would be consecutive. Gave assurances to [Movant] and family." The failure to acknowledge such evidence and then analyze its significance deprives the State's brief of any analytical value. *Cf.* ***J.A.R. v. D.G.R.***, 426 S.W.3d 624, 631 n.12 (Mo. banc 2014) (where argument lacked "any analytical or persuasive value" because it did not "identify favorable evidence in the record or explain why that evidence and its reasonable inferences are such that the court could not reasonably decide that [the father at issue had] neglected the [c]hildren").

The presumption that the motion court's findings and conclusions are correct stands unrebutted, and the judgment granting post-conviction relief is affirmed.


DON E. BURRELL, PRESIDING JUDGE - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS

GARY W. LYNCH, J. - CONCURS