**Opinion issued November 13, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00972-CR

————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**WILLIE THOMAS STOBAUGH, Appellee**

---

**On Appeal from the 482nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1763097**

---

## MEMORANDUM OPINION

A grand jury indicted appellee Willie Thomas Stobaugh for the offense of sexual assault of a child. TEX. PENAL CODE § 22.011(a)(2)(A). A jury convicted appellee of the lesser-included offense of indecency with a child by sexual contact. *Id.* § 21.11.

Appellee filed a motion for new trial on October 18, 2023. Appellee filed a supplement to his motion for new trial on November 16, 2023, including affidavits from his trial counsel, Carmen Roe and James Alston. The trial court granted appellee's motion for new trial and the State timely filed its notice of appeal.

In three issues, the State argues that: (1) the trial court erred in considering the affidavits attached to appellee's supplement to his motion for new trial because the supplement was an untimely amendment, (2) the trial court erred by granting a new trial in the interest of justice, and (3) the record does not evince that appellee was entitled to a new trial on either of the grounds that appellee alleged in his motion for new trial. We affirm.

## Background

The indictment against appellee stated, in pertinent part, that:

[Appellee] heretofore on or about March 9, 2011, did then and there unlawfully, intentionally and knowingly cause the penetration of the sexual organ of K.S., hereinafter called the Complainant, a person younger than seventeen years of age, by placing his penis into the sexual organ of the Complainant.

Appellee pleaded not guilty to the allegations in the indictment.

K.S.[1] is appellee's daughter. As to the charged offense, K.S. alleges that, when K.S. was 14 years old, and had just changed into her bathing suit to go swimming, K.S. passed by appellee's bedroom door in the hallway, and appellee

---

[1] We use a pseudonym to refer to the minor complainant. *See* TEX. R. APP. P. 9.10(a)(3).

called her into the room. K.S. alleges that appellee had K.S. pull down her bathing suit straps, pulled the bathing suit down onto the floor, and appellant "started playing with, like [her] boobs and whatnot." According to K.S., appellee then had K.S. climb on top of appellee and "he just sort of put his penis inside [her] vagina."

K.S. made her initial outcry[2] in 2020, when she was 23 years old.

On August 9, 2023, 35 days before trial, the State filed its Notice of Intention to Use Extraneous Offenses and Prior Convictions. In this notice, the State notified the trial court and the defense of its intention to introduce evidence of the following extraneous allegations at trial:

> That in Harris County, Texas, on or about March 9, 2011 and on other, multiple occasions, pursuant to a continuing course of conduct, [appellee] did intentionally and knowingly cause the penetration of the female sexual organ of K.S., hereinafter called the Complainant, a person younger than fourteen years of age and not the spouse of [appellee], by placing his sexual organ in the female sexual organ of the Complainant.

> That in Harris County, Texas, on or about March 9, 2011 and on other, multiple occasions, pursuant to a continuing course of conduct, [appellee] did intentionally and knowingly cause the sexual organ of K.S., a person younger than fourteen years of age and not the spouse of [appellee], to contact the sexual organ of the Defendant.

> That in Harris County, Texas, on or about March 9, 2011 and on other, multiple occasions, pursuant to a continuing course of conduct, [appellee] did intentionally and knowingly engage in sexual

---

[2] "Outcry" is a term of art used to describe the first disclosure statement that a child complainant makes to an adult. TEX. CODE CRIM. PROC. art. 38.072; TEX. FAM. CODE § 54.031.

contact with K.S., a child under the age of seventeen years and not the spouse of [appellee], by touching the genitals of K.S. with the intent to arouse and gratify the sexual desire of [appellee].

That in Harris County, Texas, on or about March 9, 2011 and on other, multiple occasions, pursuant to a continuing course of conduct, [appellee] did intentionally and knowingly engage in sexual contact with K.S., a person younger than seventeen years of age and not the spouse of [appellee], by touching through clothing the breast of K.S. with the intent to arouse and gratify the sexual desire of [appellee].

That in Harris County, Texas, on or about March 9, 2011 and on other, multiple occasions, pursuant to a continuing course of conduct, [appellee] did intentionally and knowingly, with intent to arouse and gratify the sexual desire of [appellee], intentionally and knowingly expose [appellee's] genitals, knowing that K.S., a child younger than seventeen years of age and not the spouse of [appellee] was present.

On August 28, 2023, 19 days before trial, the State filed its Notice of Intention to Use Child Abuse Victim's Hearsay Statement.[3] This instrument further detailed the allegations of appellee touching K.S.'s breasts and appellee having penetrative sex with K.S. The August 28 notice also significantly expanded the date range of the abuse as "starting when [K.S.] was 13 years old and ending when she left the home for good in 2018."[4]

---

[3] Although this notice was timely for the purposes of article 38.072 of the Texas Code of Criminal Procedure, to the extent that it disclosed additional extraneous allegations, it was untimely for the purposes of article 38.37 of the Texas Code of Criminal Procedure.

[4] K.S. was born in 1997.

Neither of the notices described allegations of appellee having K.S. touch appellee's genitals, or allegations alleged to have occurred in Polk County or Galveston County. Notwithstanding this lack of notice, at trial, appellee's trial counsel did not object to the admission of these extraneous offenses for lack of notice. Both lawyers stated in their later, post-trial affidavits that their failure to object to the introduction of this evidence was not a tactical or strategic decision.

Without objection, the jury heard K.S.'s testimony about alleged incidents of abuse that were either not mentioned in the notices, or were listed in the untimely August 28, 2023 notice. Specifically, K.S. testified that, beginning when she was 13 years old, appellee started commenting about whether K.S. was or was not wearing a bra. K.S. and appellee would rough house and appellee would pin K.S. down underneath him and grab her breasts through her t-shirt. K.S. estimated that from age 13 to 14, appellee touched her inappropriately "well over a dozen times." K.S. stated that the inappropriate touching continued when she was 15 years old, just not "as much." K.S. described this touching as appellee playing with her breasts and "finger[ing]"[5] her while they were in Onalaska, in Polk County.[6] K.S. also recounted that when she was 16, she awoke to find appellee in bed with her

---

[5] K.S.'s testimony did not elaborate as to whether "fingering" included digital penetration.

[6] According to K.S.'s testimony, she and appellee lived in Onalaska when she was 15 to 18 years of age.

and that he had pulled the back side of her pants down. According to K.S., when she woke up appellee got off her, pulled up his pants, and left the room. K.S. also testified regarding a trip to Galveston right after Hurricane Ike, when appellee had K.S. touch him through his pants on his penis and appellee ejaculated.[7]

At the jury charge conference, appellee's trial counsel objected to the inclusion of a lesser-included offense of indecency with a child. The trial court ultimately included the following instruction:

> "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

This definition of "sexual contact" is broader than that which would have been constituted a lesser-included offense of the charged offense in that the application paragraph for the charged offense authorizes a conviction based only on appellee's "causing the genitals of [K.S.], to contact the genitals of [appellee.]" Appellee's trial counsel did not object to this broad definition, and later stated in affidavits that the failure to object was not a strategic decision.

The jury returned a guilty verdict as to the lesser-included offense of indecency with a child by contact. The same jury assessed appellee's punishment

---

[7] The August 28, 2023 notice includes an allegation of similar conduct in Surfside, Brazoria County, Texas, in which K.S. alleged that she and appellee had sexual intercourse and appellee "ejaculated while penetrating her vagina."

at eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice and recommended that the sentence be suspended over a term of community supervision. The trial court followed the jury's recommendation and placed appellee on a term of community supervision for 6 years.

Appellee timely filed a motion for new trial on October 18, 2023, exactly 30 days after the trial court entered its judgment on September 18, 2023. In appellee's motion for new trial, he alleged that (1) the evidence was legally insufficient to support the jury's verdict, and (2) he received ineffective assistance of counsel because his counsel failed to object to the admission of evidence of unnoticed and untimely noticed extraneous offenses, and to errors and omissions in the jury charge. On October 23, 2023, the trial court set the motion for a hearing that took place on November 17, 2023.

On November 16, 2023, appellee filed his "Supplement to Motion for New Trial and Proposed Order." This instrument did not raise any additional arguments but attached an affidavit from each of appellee's two trial attorneys, James Alston and Carmen Roe. Roe's affidavit attached and referred to two exhibits that were represented to be interview notes from two of the prosecutors who handled the case and interviewed complainant.

At the hearing on November 17, 2023, appellee offered as "Defendant's Exhibit 1" his motion for new trial with the attached exhibits and the affidavits of

Alston and Roe. The State objected to the admission of the affidavits based on "the timeliness" of the disclosure of the affidavits, claiming to have received them at around five o'clock the previous day. Alston was present in the courtroom during the hearing and available to testify, and Roe made herself available to testify subject to a hearing she had in a nearby courthouse. Neither appellee nor the State elicited any live testimony from either Alston or Roe.

On November 29, 2023, the trial court granted appellee's motion for new trial. In doing so, the trial court struck through portions of appellee's proposed order and added additional text, causing it to read:

> Having reviewed the motion for a new trial, the supplement to the motion for a new trial, and the evidence presented at the motion [sic] for a new trial, the Court finds that the arguments made in the motion are meritorious and hereby ORDERS that the motion is GRANTED.
>
> The Court finds that, had a notice objection been made, it would have been sustained and that the Defendant was prejudiced by the introduction of these extraneous offenses during the guilt-innocence phase of his trial.
>
> This Court grants the Motion for New Trial in the interest of justice.
>
> The Court also finds that the Defendant was prejudiced by the inclusion of these errors in the charge.

Shortly after the trial court's ruling, the State objected that the trial court's stated ground, "in the interest of justice," was outside of the two grounds raised in appellee's motion for new trial (insufficient evidence and ineffective assistance of

8

counsel). When asked by the parties for clarification of its ruling, the trial court explained that its ruling was:

> based off of numerous errors that were done by all sides of the court, including the court, the defense, as well as the State. And so in the interest of justice, the Court has indicated that I don't believe [appellee] received a fair trial based off of those errors and those errors being egregious towards what defense was putting out there as their strategy. That was the Court's ruling.

Appellee's counsel requested "a finding on the record of ineffective assistance of counsel, just to clarify that." The trial court responded:

> And here is my issue: I don't think that they were ineffective. I don't. I think that there was a lot of errors that happened between them, the State, and myself. I think those errors combined made it as if [appellee] did not receive a fair trial. In terms of their errors alone, taken apart, I think everybody makes errors during a trial; but I think that they, in terms of what they did, were effective.

In response to a request for further clarification, the trial court explained that the errors were made during the trial by the State and defense

> [a]s well as the Court. Making the error of having a broad definition of sexual contact. Those errors put together goes directly towards what I think the defense's strategy was in this case and could have led to [appellee] not receiving a fair trial in this case.

### The Supplement

On appeal, the State first argues that "[t]he trial court erred in considering any content in [a]ppellee's 'supplement' to the [a]ppellee's motion for new trial because the 'supplement' was actually an untimely amendment, to which the State

9

objected." We agree as to the untimely amendment but hold that the affidavits were properly admitted at the hearing.

## A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Valadez v. State*, 663 S.W.3d 133, 143 (Tex. Crim. App. 2022); *McDonnell v. State*, 674 S.W.3d 694, 701 (Tex. App.—Houston [1st Dist.] 2023, no pet.). We will not reverse the trial court's ruling if it is within the zone of reasonable disagreement. *Valadez*, 663 S.W.3d at 143; *McDonnell*, 674 S.W.3d at 701. We must uphold the trial court's evidentiary ruling if it is correct under any theory of law applicable to the case. *Fish v. State*, 609 S.W.3d 170, 181 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *Price v. State*, 502 S.W.3d 278, 283 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

## B.    Analysis

Appellee's "supplement" was an out-of-time amendment to his motion for new trial. A party may amend his motion for new trial within 30 days after the date the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial. TEX. R. APP. P. 21.4(b). Filing affidavits in support of a motion for new trial more than 30 days after sentencing is considered an untimely attempt to amend the motion. *Klapesky v. State*, 256 S.W.3d 442, 455 (Tex. App.—Austin 2008, pet. ref'd). As such, the supplement

itself was an untimely amendment, and appellee was not entitled to consideration of that document as an amended motion for new trial. *Id*. at 454-56.

The admission of the affidavits as evidence at the hearing on the motion for new trial is a distinct question from the timeliness of the amendment. In a hearing on a motion for new trial, "[t]he court may receive evidence by affidavit or otherwise." TEX. R. APP. P. 21.7. There is no requirement that a trial court take live testimony as opposed to affidavits at a motion for new trial hearing. *Cavitt v. State*, 507 S.W.3d 235, 246 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). The trial court is not required to believe the factual statements made in an affidavit, even when they are uncontradicted by other affidavits. *Proctor v. State*, 319 S.W.3d 175, 186 (Tex. App.—Houston [1st Dist.] 2010, pet. stricken by *Proctor v. State*, No. PD-1213-10, 2011 WL 334197 (Tex. Crim. App. 2011)).

In this case, the trial court granted a hearing on appellee's sworn motion for new trial well before appellee filed his supplement. At the hearing, appellee offered not only the two affidavits of trial counsel, as permitted by Rule 21.7, but also the live testimony of both witnesses. Appellee's counsel explained to the trial court that he did not "have anything to elicit from [trial counsel] other than what they have already stated in their affidavits, but they are available if the Court would like to hear from them directly." The trial court implicitly decided to admit

11

the affidavits in lieu of trial counsel's testimony. The State apparently decided not to cross-examine trial counsel, even after the trial court admitted the affidavits as evidence at the hearing. We cannot say that the admission of the trial attorneys' affidavits as evidence was error, where it is authorized by the Texas Rules of Appellate Procedure. TEX. R. APP. P. 21.4(b).

**The "Interest of Justice"**

In the State's second point of error, it argues that "[t]he trial court erred in granting a new trial based on a *sua sponte* 'interest of justice' ground because [a]ppellee did not allege that basis for relief, along with a valid legal reason, in [a]ppellee's motion for new trial." We agree.

## A.    Standard of Review

The trial court's decision to grant or deny a motion for new trial is reviewed for an abuse of discretion. *Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024) (citing *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017)). "[W]e do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Becerra*, 685 S.W.3d at 127 (citing *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014)). An abuse of discretion occurs when "no reasonable view of the record could support [the trial court's] ruling." *Id.* (citing *Burch*, 541 S.W.3d at 820). The trial court is the sole judge of the credibility of the evidence proffered in support of a motion for

new trial. *Id.*; *see Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021) (holding the reviewing court applies "a uniformly deferential standard of review to a trial court's finding in ruling on a motion for new trial").

A trial court generally does not abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the standards in Texas Rule of Appellate Procedure 44.2. *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007). The trial court cannot grant a new trial based on mere sympathy, an inarticulate hunch, "or simply because [s]he personally believes that the defendant is innocent or 'received a raw deal.'" *Id.* at 907.

## B.    Analysis

A trial court can grant a motion for new trial "in the interest of justice." *State v. Gonzalez*, 820 S.W.2d 9, 12 (Tex. App.—Dallas 1991, pet. denied). However, a trial court does not have the discretion to grant a new trial for that reason unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial. *State v. Sanders*, 440 S.W.3d 94, 100 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). A trial court has no

authority to grant a motion for new trial on grounds not raised in the motion. *State v. Provost*, 205 S.W.3d 561, 566 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

In *State v. Thomas*, the Texas Court of Criminal Appeals held that a trial court could not grant a motion for new trial that was not based on a valid legal claim. 428 S.W.3d 99, 107 (Tex. Crim. App. 2014). The appellee in *Thomas* argued in the trial court that his motion for new trial should be granted "in the interest of justice" because there was compelling evidence that had not been presented at trial. *Id*. at 102. In support of his motion, appellee presented evidence that there was a witness with exculpatory information available at trial and known to trial counsel who did not testify. *Id*. Appellee maintained that he was not advancing a claim of ineffective assistance of counsel or any other claim listed under Texas Rule of Appellate Procedure 21.3. *Id*. At the hearing, when the State attempted to ask trial counsel whether he had a strategy for not calling the witness, he asserted attorney-client privilege. *Thomas*, 428 S.W.3d at 102-03. The trial court granted the motion for new trial, which the Texas Court of Criminal Appeals ultimately held was error. *Id*. at 107. The court reasoned that the failure of trial counsel to call an exculpatory witness who was available at trial and known to the defense was not, by itself, a valid legal claim. *Id*.

In a case similar to the instant case, the Austin Court of Appeals recently reversed a trial court's grant of a motion for new trial based on grounds not raised

14

in the defendant's motion. *State v. Gant*, 709 S.W.3d 707, 718 (Tex. App.—Austin 2025, pet. ref'd). In *Gant*, the appellee filed a motion for new trial alleging that the verdict was contrary to the law and evidence and that the punishment assessed was excessive. *Id*. at 711. The trial court granted the motion but explained that it was granting the motion on the ground of ineffective assistance of counsel, despite that claim not having been raised in the motion. *Id*. at 711-12. The State objected. *Id*. at 715. The court of appeals reversed the trial court's order, reasoning that a trial court does not have the discretion to grant a motion for new trial if that motion is litigated in a manner that circumvents the State's ability to defend its verdict and the State objects. *Id*. at 714.

In this case, appellee raised two grounds: sufficiency of the evidence and ineffective assistance of counsel. The State filed no written response. This record makes clear that the State prepared for the hearing based on the specific grounds that appellee raised in his motion for new trial, and not the ground of "the interest of justice." The State's arguments at the hearing first addressed the legal sufficiency grounds raised in appellee's motion for new trial and were based on three cases the prosecutor researched in advance of the hearing. Next, the State argued against appellee's position that his trial counsel were ineffective due to their failure to object to the jury charge, also providing a case that the prosecutor researched before the hearing. Lastly, the State argued against the appellee's

15

grounds that his trial counsel were ineffective for failing to object to the admission of certain extraneous offenses, citing yet another case. As in *Gant*, the State objected shortly after the trial court's ruling to the trial court's grant of the motion for new trial on grounds not stated in the motion.

Applying the reasoning in *Gant* here, the trial court exceeded its authority in granting the motion for new trial based on the "interest-of-justice" ground where appellee did not raise it, and the State objected to the trial court's granting the motion on that basis. *Provost*, 205 S.W.3d at 566; *Gant*, 709 S.W.3d at 714-15.

### Appellee's Other Grounds

We must nevertheless uphold the ruling if it is correct on any other theory raised to the trial court. *Provost*, 205 S.W.3d at 566 ("[W]e must still address the grounds raised in appellee's motion for new trial even though it is apparent the trial court did not grant a new trial on those grounds."); *Gant*, 709 S.W.3d at 715 (citing *Herndon*, 215 S.W.3d at 905 n.4 ("We will nevertheless uphold the ruling [on a motion for new trial] if it is correct on any applicable theory")). In the State's third and final issue, it argues that "the trial court . . . abused its discretion in granting a new trial . . .because the record does not establish that [a]ppellee was entitled to relief on either of the grounds that [a]ppellee alleged, namely insufficient evidence or ineffective assistance of counsel."

16

In appellee's motion for new trial, he alleged that (1) the evidence was legally insufficient to support the jury's verdict; and (2) appellee received ineffective assistance of counsel who failed to object to the admission of evidence of unnoticed and untimely noticed extraneous offenses, and to errors and omissions in the jury charge. We first address the sufficiency of the evidence.

## A.    Sufficiency of the Evidence

When deciding a motion for new trial challenging the legal sufficiency of the evidence, the trial court applies the appellate legal sufficiency standard of review. *Provost*, 205 S.W.3d at 567. In a criminal trial, the State bears the burden to persuade the factfinder that the defendant is guilty of the charged offense beyond a reasonable doubt. *Baltimore v. State*, 689 S.W.3d 331, 340 (Tex. Crim. App. 2024). Evidence is legally sufficient to support a conviction if a rational trier of fact could have found that the defendant committed each element of the offense beyond a reasonable doubt. *Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

Reviewing courts measure the sufficiency of the evidence by comparing the trial evidence to the essential elements of the charged offense as defined by a hypothetically correct jury charge. *Baltimore*, 689 S.W.3d at 341. A hypothetically

correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was charged. *Id.* The law authorized by the indictment consists of the statutory elements of the offense as modified by the allegations in the indictment. *Id.*

We consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences from it, a rational juror could have found that the State had proven the essential elements of the charged offense beyond a reasonable doubt. *Id.* The jury has "full responsibility" to fairly resolve conflicts in witness testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* The jury may believe or disbelieve some or all of a witness's testimony. *Vernon v. State*, 571 S.W.3d 814, 820 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). A reviewing court considers the cumulative force of all the evidence—both direct and circumstantial—to determine whether sufficient evidence exists to establish each element of the offense. *Baltimore*, 689 S.W.3d at 341; *Vernon*, 571 S.W.3d at 819.

The application paragraph in the jury instruction on the lesser-included offense of indecency with a child read, in pertinent part, that the jury was authorized to convict appellee of indecency with a child by contact if it found from

18

the evidence beyond a reasonable doubt that appellee "engaged in sexual contact with K.S. a person younger than 17 years of age, by causing the genitals of K.S., to contact the genitals of [appellee], with the intent to arouse and gratify the sexual desire of [appellee.]" Thus, the application paragraph here was "hypothetically correct." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc) (explaining that the hypothetically correct jury charge is the one that accurately sets out the law, as authorized by the indictment, does not unnecessarily increase the the State's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried). K.S. was the sole testifying witness to the alleged incident. According to K.S.'s testimony, appellee played with K.S.'s breasts and had K.S. climb on top of appellee and "he just *sort of* put his penis inside [her] vagina." (emphasis added) Viewing this evidence in the light most favorable to the verdict, a rational juror could have drawn the inference from the qualified "sort of" statement that appellee's penis contacted K.S.'s vagina in commission of the offense of indecency with a child,[8] but have a reasonable doubt regarding whether appellant achieved penetration as would be required for the offense of sexual assault of a child.[9]

---

[8]     TEX. PEN. CODE § 21.11(c)(1).

[9]     *Id*. § 22.011(a)(2)(A).

The evidence was therefore legally sufficient to support the conviction for indecency with a child. *See, e.g., Arroyo v. State*, 559 S.W.3d 484, 488-89 (Tex. Crim. App. 2018) (holding that evidence was sufficient to support conviction for indecency by touching breast where complainant said that appellant "rubbed her chest"); *Romano v. State*, 612 S.W.3d 151, 157 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (holding that evidence was sufficient to support conviction for attempted indecency with a child by contact where appellant moved massager up complainant's thigh toward genitals before complainant stopped appellant, and for indecency with a child by contact where appellant spooned complainant and complainant felt appellant's penis on complainant's back).

## B.    Ineffective Assistance of Counsel

In addition to complaining of insufficiency of the evidence, appellee's motion for new trial alleged that appellee received ineffective assistance because his counsel failed to object (1) to the admission of evidence of unnoticed and untimely noticed extraneous offenses, and (2) to errors and omissions in the jury charge.

To prove that trial counsel provided ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's performance was deficient and (2) that deficiency prejudiced him, meaning that there is a reasonable probability that the result of the proceeding would have been

different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Martinez v. State*, 449 S.W.3d 193, 204 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Failure to satisfy one prong of the test eliminates a court's need to consider the other prong. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

First, it must be established whether trial counsel's performance fell below an objective standard of reasonableness. *Martinez*, 449 S.W.3d at 204 (citing *Robertson v. State,* 187 S.W.3d 475,483 (Tex. Crim. App. 2006)). There is a strong presumption that trial counsel's conduct falls within a wide range of reasonableness and constitutes a "sound trial strategy." *Strickland*, 466 U.S. at 689; *Martinez*, 449 S.W.3d at 204. Unless appellant provides a record that affirmatively demonstrates that counsel's performance was not a product of sound trial strategy, a reviewing court will presume that counsel's performance was constitutionally adequate. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008). However, trial counsel's performance may still fall below an objective standard of reasonableness when no reasonable trial strategy would justify trial counsel's conduct, even when trial counsel's subjective reasoning is adequately reflected in the record. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Under the second prong of the *Strickland* test, the appellant establishes prejudice by showing that there is a reasonable probability, sufficient to undermine

confidence in the outcome, that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687. When the appellant demonstrates that his counsel's errors were so serious that they deprived the appellant of a fair trial, the second prong is satisfied. *Id.*

To succeed on an ineffective-assistance-of-counsel claim based on counsel's failure to object, one must show that the trial judge would have committed error in overruling the objection. *Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

### 1. Failure to Object to Jury Charge Error

We cannot say that appellee was prejudiced by trial counsel's failure to object to the jury charge, where the inclusion of the full statutory definition in the abstract portion of the charge did not constitute reversible error.

In *Crenshaw v. State*, the Texas Court of Criminal Appeals held that the jury charge did not expand the allegations against the appellant, where the abstract portion of the charge included an expanded definition of the term "intoxication." 378 S.W.3d 460, 468 (Tex. Crim. App.). In *Crenshaw*, the State charged appellant with driving while intoxicated, alleging in the information that appellant was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol—or alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances—into his

22

body. *Id.* at 462. The jury charge, in the definition section of the abstract portion, included the per se definition of "intoxication" of having an alcohol concentration of 0.08 or more. *Id.* at 463. However, the application paragraph only authorized a conviction if the jury found beyond a reasonable doubt that appellant was intoxicated by the definitions alleged in the information and did not incorporate the per se definition from the abstract portion. *Id.* at 464, 467. The court found no error in the jury charge, as it specifically authorized a conviction only where the State proved intoxication as alleged in the charging instrument. *Crenshaw*, 378 S.W.3d at 467-68.

Similarly, in the instant case the jury charge included the full, statutory definition of "sexual contact" in the abstract portion. But the application paragraph only authorized a conviction on the specific contact that comprised the lesser-included offense of indecency with a child, i.e., "causing the genitals of [K.S.], to contact the genitals of [appellee.]" As such, the jury charge did not expand the allegations against appellee. *Crenshaw*, 378 S.W.3d at 467-68.

In his brief, appellee cites another Texas Court of Criminal Appeals case, *Burnett v. State*, 541 S.W.3d 77 (Tex. Crim. App. 2017), for the proposition that the inclusion of the full, statutory definition of "sexual contact" was jury charge error. However, *Burnett* is distinguishable from both the instant case and *Crenshaw* in that the jury charge in *Burnett* included the expanded definition of

"intoxication" in both the abstract and application sections. *Id.* at 78. We cannot say that the instant case is analogous to *Burnett*, as the jury charge in the instant case did not expand the allegation by authorizing a conviction using the expanded definition in the application paragraph. The jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Crenshaw*, 378 S.W.3d at 467 (citing *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996)).

Therefore, where the trial court would not have committed reversible error in overruling appellant's objection to the statutory definition in the abstract portion of the jury charge, appellee was not prejudiced by trial counsel's failure to object. *Martinez*, 330 S.W.3d at 901.

### 2. Failure to Object to Extraneous Offenses

Appellee argued in his motion for new trial that trial counsel rendered deficient performance in failing to object to the extraneous offense evidence regarding alleged incidents when K.S. was 13 and 19 and in Polk and Galveston Counties, and appellee suffered prejudice as a result.

"It is a well established and fundamental principle in our system of justice that an accused person must be tried only for the offense charged and not for being a criminal (or a bad person) generally." *Templin v. State*, 711 S.W.2d 30, 32 (Tex. Crim. App. 1986).

24

To avoid surprises during trial, rule 404(b) of the Texas Rules of Evidence requires the prosecutor to give reasonable notice before trial begins if the prosecution intends to introduce evidence—other than that arising from the same transaction—in its case-in-chief. TEX. R. EVID. 404(b); *Rodriguez v. State*, 546 S.W.3d 843, 863 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Worthy v. State*, 312 S.W.3d 34, 37 (Tex. Crim. App. 2010). The notice requirement under rule 404(b) is triggered by a timely request by the accused. *See Webb v. State,* 995 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that defendant's failure to ask State to give notice of its intent to introduce extraneous offense evidence precluded any complaint about sufficiency of notice he was given); *see also Hernandez v. State*, 914 S.W.2d 226, 235 (Tex. App.—Waco 1996, no pet.) (holding three days' notice was untimely where defendant filed request for notice of extraneous bad-act evidence). When a defendant requests notice of extraneous offense evidence, it triggers the State's duty to provide reasonable notice. *Webb v. State*, 36 S.W.3d 164, 176-77 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Likewise, article 38.37 of the Texas Code of Criminal Procedure requires at least 30 days' notice of the State's intent to introduce evidence of extraneous offenses or acts. TEX. CODE CRIM. PROC. art. 38.37 § 3. The notice requirement under article 38.37 is automatic and does not require a request from the accused to

trigger it. *Id*. Upon proper notice, notwithstanding rules 404 and 405 of the Texas Rules of Evidence, evidence of any crimes, wrongs, or acts committed by the defendant against the complainant of the alleged offense shall be admitted for its bearing on relevant matters, including the state of mind of the defendant and the complainant, and the previous and subsequent relationship between the defendant and complainant. *Id*. art. 38.37 § 1. Without proper notice, it is error to admit extraneous offense evidence at trial. *See, e.g., Dominguez v. State*, No. 04-04-00902-CR, 2005 WL 3533047 at *2 (Tex. App.—San Antonio 2005, no pet.) (mem. op., not designated for publication) (holding that it was error–albeit harmless–to admit extraneous offense evidence without notice); *Garcia v. State*, No. 04-06-00449-CR, 2007 WL 3084671 at *2 (Tex. App.—San Antonio 2007, no pet.) (mem. op., not designated for publication) (same); *Hernandez v. State*, No. 13-97-00675-CR, 1998 WL 34202539 at *2 (Tex. App.—Corpus Christi 1998, no pet.) (mem. op., not designated for publication) (same).

In *Dryer v. State*, we held that trial counsel rendered ineffective assistance for failing to object to certain extraneous offense evidence during the guilt-innocence phase of trial. 674 S.W.3d 635, 653 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd). In *Dryer*, the defendant's trial counsel failed to object to extraneous offense evidence pertaining to a second complainant, which the State

sought to admit under section 2 of article 38.37.[10] *Id*. at 639. The State specifically sought to admit testimony from the extraneous complainant that, when she was 17 years old, the defendant touched her upper thigh and moved his hand toward her "private area." *Id*. The defendant's trial counsel made a general objection on the grounds that the testimony was irrelevant or that its relevance was substantially outweighed by the danger of unfair prejudice. *Id*. at 639-40. The trial court ruled that the extraneous incident was admissible. *Id*. at 640. We reversed, reasoning that the evidence was inadmissible where the extraneous complainant was not a "child" for the purposes of admissibility on the theory that the defendant committed an offense enumerated in section 2 of article 38.37. *Id*. at 647-48. As such, the defendant's trial counsel rendered deficient performance by failing to object on that basis, as "no competent lawyer would have failed to make this objection." *Id*. at 648. We found that the appellant suffered prejudice from trial counsel's error, where the extraneous offense corroborated the testimony of the complainant of the charged offense. *Id*. at 652.

In this case, appellee timely requested notice of extraneous offense evidence and discovery of the same. Notwithstanding the notice provisions of article 38.37 and rule 404(b), the State presented evidence of three extraneous offenses that

---

[10]     Section 1 of article 38.37 of the Texas Code of Criminal Procedure concerns evidence regarding the same complainant as the charged offense. Section 2 of article 38.37 concerns evidence regarding a separate complainant than the complainant in the charged offense. TEX. CODE CRIM. PROC. art. 38.37.

were noticed untimely or not at all. Specifically, the State presented evidence that (1) when K.S. was 13 years old, the defendant touched her butt and breasts through her clothing (untimely notice); (2) in Onalaska appellee "fingered" K.S. and touched K.S.'s breasts when she was 16 years old (no notice); (3) in Onalaska when K.S. was 16 years old she awoke to find her pants pulled down and appellee getting off of her and pulling his pants up (no notice); (4) in Galveston, appellee made complainant touch him "through the pants on his penis" causing him to "ejaculate through his pants" (no notice); and (5) when K.S. was 19 years old, the defendant put his hands up her sweatshirt and played with her breasts through her bra (untimely notice). Indeed, the notice does not include any mention of extraneous offenses alleged to have occurred outside of Harris County or extraneous offenses involving appellee having K.S. touch his penis.

Had trial counsel objected, the trial court could have excluded the extraneous allegation due to the State's untimely notice or lack of notice. *See Distefano v. State*, 532 S.W.3d 25, 36 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (holding that article 38.37 did not violate separation of powers where trial court retained discretion to exclude evidence); *see Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) ("[s]ince the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence

28

when the State has not complied with the notice provision of Rule 404(b)").[11] In the alternative, the trial court could have granted a continuance to reduce the surprise. *See Hernandez*, 176 S.W.3d at 824.[12]

Had the trial court excluded the extraneous offense evidence, the jury would have heard only about the charged offense and not about an allegedly yearslong campaign of child abuse by appellee against K.S. Evidence of extraneous offenses can be inherently prejudicial. *See Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983) (acknowledging evidence of extraneous robbery bolstered circumstantial evidence of appellant's being merely present during subsequent robbery of same location).

In *Dryer*, we held that the erroneous admission of extraneous conduct caused *Strickland* prejudice under similar circumstances. 674 S.W.3d at 652-53. The admission of the extraneous offense in *Dryer* expanded the presentation of evidence from the charged offense alone to multiple allegations. *Id.* at 652. We

---

[11]    The trial court, in its order granting the motion for new trial, found that "had a notice objection been made, it would have been sustained."

[12]    Neither party appears to suggest the possibility that the remedy for the lack of notice could have been a continuance. Had trial counsel had more time, she could have fulfilled her duty to investigate the extraneous allegations. *See Rompilla v. Beard*, 545 U.S. 374, 383-84 (2005) (holding that counsel had duty in capital murder trial to investigate the accused's prior conviction for rape). Such investigation might have revealed other witnesses who were present at the time of the alleged incidents, or prior inconsistent statements by K.S. regarding the alleged incidents. However, without timely notice, there was likely no opportunity for such investigation.

29

reasoned that, because the extraneous offense evidence bolstered the complainant's testimony about the abuse, there was a reasonable probability that the outcome of the trial would have been different. *Id.* In doing so, we noted several cases in which the accused suffered *Strickland* prejudice, i.e., there was a reasonable probability that the outcome of the trial would have been different. *See, e.g., Ex parte Menchaca*, 854 S.W.2d 128, 132-33 (Tex. Crim. App. 1993) (holding that lawyer's failure to prevent admission of inadmissible prior conviction for rape in drug prosecution was both deficient and prejudicial in significant part because it permeated entire guilt-innocence phase of trial and outcome rested entirely on credibility of witnesses, and prior conviction undermined defendant's credibility and thus heart of his defense); *Garcia v. State*, 308 S.W.3d 62, 66-69, 75-76 (Tex. App.—San Antonio 2009, no pet.) (holding that lawyer's opening door to rebuttal evidence of defendant's sexual assault of second victim in prosecution for sexual assault was, among other failings, deficient and prejudicial given that sole viable defense depended on defendant's credibility); *Stone v. State*, 17 S.W.3d 348, 352-54 (Tex. App.—Corpus Christi 2000, pet. ref'd) (holding lawyer's introduction of otherwise inadmissible murder conviction during trial's guilt-innocence phase in drug prosecution was both deficient and prejudicial because it diminished defendant's credibility, which was critical to his defense, and corroborated prosecution evidence about his behavior); *Ramirez v. State*, 873 S.W.2d 757, 762-

63 (Tex. App.—El Paso 1994, pet. ref'd) (holding lawyer's failure to prevent admission of evidence of remote murder conviction during trial's guilt-innocence phase was deficient and prejudicial in that defendant claimed self-defense and his prior conviction both harmed his credibility and was used by the prosecutor to argue that he had propensity to commit murder).

In the instant case, this testimony and argument considerably expanded the narrative from the charged allegation into an entire adolescence of sexual abuse, all without the requisite notice under article 38.37 and rule 404(b). K.S.'s testimony about the charged offense comprises less than three pages of the trial transcript. By contrast, K.S.'s testimony about extraneous allegations comprises almost seven pages of the trial transcript. This battery of allegations permeated the trial and significantly undermined the defense's theory that K.S. had fabricated the charged allegation because she was upset with appellee. In closing arguments, the State highlighted the unnoticed extraneous allegations, characterizing the incident of K.S.'s touching appellee's penis as "her prize for doing this," and recounting the out-of-county "fingering" incident with vivid detail. As such, where the extraneous offense evidence permeated the entire trial and expanded K.S.'s testimony from one isolated allegation to a yearslong campaign of sexual abuse, appellee suffered prejudice. *Dryer*, 674 S.W.3d at 652-53.

31

Because appellee received ineffective assistance of trial counsel for failing to object to the unnoticed extraneous offenses, and there is a reasonable probability the outcome would have been different without this evidence, this ground was sufficient to warrant a new trial. *Id.*

## Conclusion

Having found that there was a sufficient ground for the trial court to grant appellee's motion for new trial, we affirm the trial court's order.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).